
FILED
2021 MAR 1
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEFF T.,<br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ANDREW SAUL<br>Commissioner of Social Security,<br>　　　　　Defendant. | Case No. 2:19-cv-00720-CMR<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on January 13, 2021, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, therefore, AFFIRMED.

## I. BACKGROUND

Plaintiff had completed two years of college and worked in the relevant past as a commercial/industrial cleaner, greens keeper, medical records clerk, outside deliverer, numerical control tool programmer, decal applier, and production coordinator at the time he applied for Disability Insurance Benefits (DIB) (Tr. 114, 269-348, 360, 371-78).  In November 2016, Plaintiff protectively filed an application for DIB, alleging disability beginning about three years earlier on October 1, 2013, due to a stroke with loss of left hand coordination, chronic obstructive pulmonary disease (COPD), and acid reflux (Tr. 57, 262, 359).  At the time of his November 2016 application, Plaintiff was still working as a golf course greens keeper for 30

hours a week (six hours per day, for five days each week), and continued performing that job through at least the end of 2018 (Tr. 343-45, 360). In addition to Plaintiff's job as a golf course greens keeper, he worked a handful of other short-term or temporary jobs (Tr. 59, 81-84, 328-31, 344-45).

After initial agency proceedings, an ALJ held an April 2019 administrative hearing, at which Plaintiff, his attorney, and a vocational expert appeared (Tr. 73-127). Plaintiff testified that he was unable to type due to problems with his left hand; that he had breathing problems, including persistent coughing; that he could generally perform typical activities of daily living, but sometimes needed to take a break or use a nebulizer to ameliorate breathing problems; and that he could not return to his past heavy labor positions because he needed to rest and catch his breath (Tr. 76-113). After considering limitations that the ALJ ultimately included in his residual functional capacity (RFC) finding, the vocational expert testified that Plaintiff could still perform his past relevant work as a medical records clerk and as an outside deliverer as it is generally performed in the national economy, but not as Plaintiff has performed it in the past (Tr. 62, 114-17).

The ALJ then issued a May 13, 2019, decision that Plaintiff was not disabled within the meaning of the Act (Tr. 57-65). The ALJ applied the five-step sequential evaluation for determining disability in adults (Tr. 59-65). 20 C.F.R. § 404.1520. At step two, the ALJ found that Plaintiff's COPD, left hand osteoarthritis, and sequelae of a cerebrovascular accident (CVA, i.e., stroke) affecting the left arm were severe impairments (Tr. 59). To account for Plaintiff's combined impairments, the ALJ found that Plaintiff could perform light work as defined in the regulations (20 C.F.R. § 404.1567(b)), except that he would be limited to standing and walking a combined four hours per eight-hour workday (Tr. 62). The ALJ also limited Plaintiff to only

occasional balancing, stooping, crouching, and climbing of ramps or stairs; never kneeling, crawling, or climbing ladders or scaffolds; occasionally engaging in fine handling of delicate or fragile objects, as well as fine manipulation and fingering with the left (non-dominant) hand; and performing goal-oriented, but not fast-paced work such as production line work (due to the left hand limitations, not due to any mental impairment) (Tr. 62). At step four—relying on vocational expert testimony—the ALJ found that Plaintiff was not disabled within the meaning of the Act because, even with the above-described RFC limitations, Plaintiff could still perform past relevant work (Tr. 64, 114-17).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 9-14), making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 404.981.[1]

## II. LEGAL STANDARDS

To establish that he is disabled, a claimant must show that he was unable to engage in any substantial gainful activity due to some medically determinable physical or mental impairment or combination of impairments that lasted, or were expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). A disabling physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant has the burden of furnishing medical and other evidence establishing the existence of a disabling impairment. 42 U.S.C. § 423(d)(5)(A).

Whether a claimant is disabled under the Act is a decision reserved to the Commissioner alone. 20 C.F.R. § 404.1527(d). The federal regulations set forth a five-step sequential analysis

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2018 edition, which was in effect at the time of the ALJ's decision.

that an administrative law judge (ALJ) must follow in determining the ultimate issue of disability. 20 C.F.R. § 404.1520.  A claimant bears the burden of proof at steps one through four, at which point the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform.  *See* 20 C.F.R. § 404.1512(a) (The claimant generally bears the ultimate burden of proving that she was disabled throughout the period for which benefits are sought); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

This court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  On judicial review, the agency's factual findings are "'conclusive' if supported by 'substantial evidence,'" an evidentiary threshold that "is not high." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1153-54 (2019) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek,* 139 S. Ct. at 1154 (internal quotation omitted).  The court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Lax*, 489 F.3d at 1084 (citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.  *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); *accord Biestek*, 139 S. Ct. at 1157 (where there are conflicts in the evidence, the court defers to the presiding ALJ, "who has seen the hearing up close").

### III.  ANALYSIS

At oral argument, Plaintiff—through counsel—clarified that his allegations of error were: (1) the ALJ did not properly consider evidence about Plaintiff's fatigue, including his subjective symptom testimony and treating source evidence about fatigue; and (2) the ALJ did not give a

proper analysis of how he could return to his past relevant work. Because Plaintiff opted to abandon other issues, including issues he had cursorily argued in his opening and reply briefs, the court deems any argument about them waived. *Fletcher v. U.S.*, 730 F.3d 1206, 1214 (10th Cir. 2013) (holding that an argument was "doubly waived—first for a lack of adequate development in briefing, then for being intentionally abandoned at oral argument").

### A. The ALJ reasonably accounted for Plaintiff's fatigue.

Turning first to the arguments about fatigue, the court is unpersuaded by Plaintiff's claims of error. Although Plaintiff testified that he had breathing problems, that he sometimes needed breaks during physically demanding activities of daily living, and that he could not return to his past heavy labor positions because he needed to rest and catch his breath, the ALJ considered those allegations and accounted for them in his decision. For example, the ALJ limited Plaintiff to light work involving only four hours of standing and walking, combined, during the eight-hour workday (Tr. 62), thereby limiting him to past relevant work that was consistent with those limitations. *See* 20 C.F.R. § 404.1567(b) (defining light work).

The ALJ's finding that Plaintiff's shortness of breath and fatigue did not require additional, more restrictive limitations is supported by substantial record evidence, including evidence discussed by the ALJ in his decision. For example, the ALJ found that the medical evidence was inconsistent with—and therefore did not support—Plaintiff's allegations of entirely disabling COPD-related symptoms (Tr. 63 (citing Tr. 542, 564, 576, 617-18, 650, 681, 687, 696, 866, 886, 904-05, 911, 926)). The ALJ also relied on evidence about Plaintiff's daily activities, such as his response—in a January 2018 application for a job with the Transportation Safety Administration (TSA)—that he "Frequently" did gardening and yard work (Tr. 64 (citing Tr. 880)). On that same form, Plaintiff stated that he "Frequently" walked less than two miles and "Occasionally" participated in team sports (basketball, football, soccer, etc.) and winter

sports (skiing, ice skating, etc.) (Tr. 880). And, as discussed above, for most of his alleged period of disability, Plaintiff was able to perform the medium-exertion greens keeper job for six hours a day, five days per week (Tr. 343-45, 360).

Although Plaintiff argues that the ALJ did not directly link all of that evidence to his allegations about fatigue, the court's determination of whether substantial evidence supports an ALJ's finding or reasoning is based on the entire record. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); *see also Biestek*, 139 S. Ct. at 1154 ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." (internal citation omitted)).

Similarly, Plaintiff argues that the ALJ did not discuss evidence found in the record that he believes would support his subjective allegations of disabling fatigue. In particular, Plaintiff argues that the ALJ did not discuss a statement by his treating physician, Dr. Salfee, in a January 2018 COPD treatment note. In that treatment note, Dr. Salfee stated that Plaintiff had ongoing "breathlessness" that started "many years ago," and that "The severity is NYHA class III" (Tr. 645, 681). Relying on a document entitled "Specifications Manual for Joint Commission National Quality Measures (v2018A)" found on a web page for The Joint Commission,[2] Plaintiff now argues that Dr. Salfee's note relates to "Stages of Heart Failure," with "Class III" representing a "Marked limitation in activity due to symptoms, even during less-than-ordinary activity, e.g. walking short distances (20-100 m). Comfortable only at rest." *See*

---

[2] According to its web site, The Joint Commission "is a nationally recognized leader in performance measurement and implemented standardized performance measures for internal quality improvement, accreditation and certification." It appears to be a private organization that develops "methodology" for health care. *See* https://www.jointcommission.org/measurement/ (last accessed Jan. 27, 2021).

https://manual.jointcommission.org/releases/TJC2018A/DataElem0439.html (last accessed Jan. 27, 2021).

Plaintiff's argument about Dr. Salfee's January 2018 treatment note is unpersuasive. It is unclear how The Joint Commission's NYHA Class III description shows that Plaintiff actually had the limitations described in the document his counsel found on The Joint Commission's web site, particularly where, as here, Dr. Salfee's treatment notes do not include examination findings, diagnoses, or other opinions that indicate that Plaintiff was limited to that extent. For example, on examination, Dr. Salfee found that although Plaintiff had some nasal swelling and congestion, his oxygen level was 96% on room air; he had good respiratory effort; and his breath sounds were clear in both lungs, with no wheezing, rhonchi, or crackles (Tr. 646-47, 682-83). Similarly, Dr. Salfee's heart examination was entirely unremarkable (Tr. 647, 683). Notably, Dr. Salfee's examination findings from the January 2018 visit and subsequent visits were considered by the ALJ in his narrative RFC discussion of Plaintiff's COPD (Tr. 63 (citing Tr. 650, 681, 687)). Hence, Dr. Salfee's unexplained, unsupported reference to "NYHA class III" is not "uncontroverted evidence" that the ALJ chose not to rely on, nor was it "significantly probative evidence" that the ALJ could not reject without discussion. *Wall*, 561 F.3d at 1067 (an ALJ's decision is generally adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject).

In short, the court finds that ALJ's findings about Plaintiff's breathlessness or fatigue are supported by substantial evidence and the court will not disturb them. *Biestek*, 139 S. Ct. at 1153-54, 1157 (the agency's factual findings are "'conclusive' if supported by 'substantial evidence,'" and the court defers to the presiding ALJ's resolution of evidentiary conflicts because the ALJ "has seen the hearing up close").

7

### B. The ALJ did not err at step four.

Plaintiff also argues that the ALJ erred at step four by not giving sufficient consideration to how he actually performed his past relevant work, and therefore turned the process over to the vocational expert without adequate discussion in the decision.  Plaintiff bore the burden of proving that he could not return to his past relevant work.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (at step four, the claimant bears the burden of proving that his impairment prevents him for performing his past relevant work).  Plaintiff also bore the burden of showing harmful error.  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citations omitted)).  But he has fallen short of carrying either of those burdens here.  For example, Plaintiff has not shown that the vocational expert or the ALJ misclassified his past relevant work under the *Dictionary of Occupational Titles*, or that the limitations included by the ALJ preclude performing his past relevant work.

Regardless, the ALJ's step four finding is supported by substantial evidence.  If Plaintiff can perform even one of the jobs among his past relevant work—*either* as he actually performed that job *or* as that job is generally performed in the national economy—the ALJ was required to find that he was not disabled. 20 C.F.R. § 404.1560(b).  Here, at a minimum, the ALJ reasonably found that Plaintiff could perform his past relevant work as a medical records clerk, *both* as he performed it *and* as that occupation is generally performed in the national economy (Tr. 64-65). The ALJ took the vocational expert's testimony about that job; asked clarifying questions; allowed Plaintiff's attorney to ask additional clarifying questions; and incorporated that evidence into his step-four finding about Plaintiff's past relevant work (Tr. 64-65, 113-26).  Hence, the ALJ did not abdicate his factfinding role to the vocational expert, but instead properly relied on the expert's testimony in making his step-four assessment.  20 C.F.R. § 404.1560(b); *see also*

*Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847-48 (10th Cir. 2018) (unpublished) ("[T]he ALJ expressly told the VE that the claimant was limited to frequent interactions with supervisors, coworkers, and the public, and the VE responded that such a claimant could perform Ms. Adcock's past jobs as a bank teller and an assistant librarian. The ALJ then cited the VE's testimony with approval in the latter phases to support his own findings. The ALJ also confirmed that 'the [VE's] testimony [was] consistent with the information contained in the Dictionary of Occupational Titles.' Under these circumstances, the ALJ adequately discharged his step four responsibilities." (citing *Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003))).

## ORDER

The ALJ's decision is supported by substantial evidence and is free of harmful legal error and is therefore AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 1 March 2021.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah